# THOMAS LEWIS *vs.* SAMUEL HODGDON.

One party to a negotiable note may upon request of another party to it, maintain an action for his benefit.

And the written consent of the indorser, pending the trial, that the suit may be prosecuted in his name for the benefit of the indorsee, is equivalent to a ratification of the previous proceedings.        ·

If a negotiable note be transferred to an indorsee before it becomes payable, without notice of a defence, *in payment of a pre-existing debt*, want of consideration, or the failure of it, cannot be given in evidence in defence.

If the payee of a negotiable note then over due, having knowledge that it was in the hands of an indorsee, for a valuable consideration agrees to pay it, he cannot introduce claims in set-off arising after that time.

If the depositary of papers assume the execution of the trust, he becomes responsible to any party who may suffer by the violation of it; his interest is balanced, and he is a competent witness for either party.

If a witness expects that he will be relieved from responsibility to the plaintiff by the suit, and therefore advised the bringing of it, when in fact his liability is not changed by the result of such suit, he is a *competent* witness.

When a witness has been called by one party and examined on some points, the other party may cross-examine him in relation to facts, material to the issue, other than those elicited by the party calling him; and if the answers are not satisfactory, he may by any legal proof contradict or discredit them.

The rule that if a witness testifies falsely as to any one material fact the whole of his testimony must be rejected, is not of such binding effect as to authorize the Court to instruct the jury, that they cannot believe one part of his statement and disbelieve another. This is but a presumption of law, and cases often occur in which jurors may yield entire credit to certain statements, and disbelieve others.        ·

EXCEPTIONS from the District Court, for the Middle District, REDINGTON J. presiding.

Assumpsit on a promissory note, payable to *Lewis*, or order, signed by the defendant, for $50, dated *December* 31, 1827, and attested by *Arthur Plummer*. The name of *Lewis* was indorsed by him on the back of the note, which was claimed by *G. Evans*, *Esq.* as his property. With the general issue, the defendant pleaded the statute of limitations by brief statement. The Judge ruled, that as the note had been indorsed to *Mr. Evans*, the suit should have been brought in his name, and that a nonsuit must be entered. *Mr. Evans*, acting as counsel in the case, failing to prove

that the action was prosecuted in the name of *Lewis* by his consent, introduced *Lewis,* who in open Court gave his written assent that the action might be prosecuted in his name for the benefit of said *Evans.* The Judge then ordered the action to stand for trial. The defendant then requested the Judge to order a nonsuit, but this was declined. The note had been indorsed to *Mr. Evans* in payment of a debt before due to him. *Plummer,* the witness to the note, was called by the plaintiff, and objected to by the defendant as interested. The Judge admitted him as a witness. The facts on this point are found in the opinion of the Court, as are also the other facts material to the proper understanding of the case.

After the testimony was closed, the plaintiff contended, that after he had called *Plummer,* and proved by him the execution, attestation and indorsement of the note, the defendant by inquiring relative to other distinct matters, made him, so far as respects those matters, the defendant's witness.

The Judge ruled, that this position was correct, and that if seasonably objected to by the plaintiff, the impeaching testimony would have been excluded; but that that testimony not having been objected to, it was now for the jury in view of all the evidence to decide what degree of credit should be given to *Plummer ;* that the plaintiff's case was made out, if they believed *Plummer* in that respect, as soon as the execution, attestation and indorsement of the note had been testified to ; that the burden of proof was then on the defendant; that it was from *Plummer's* testimony alone that the defendant expected to make out his defence; that therefore the testimony which tended to prove that *Plummer* had out of Court represented the transaction relative to the deposit of the note, and to the new bargain which gave force to this note, differently from his statements here, operated against the defendant; and if it proved that from his want of recollection or otherwise, *Plummer* was not to be believed in relation to the things for which the defendant had made him his witness, the defence had failed ; that there was no testimony in the case which conflicted with *Plummer's ;* that the testimony brought to show that *Plummer* had stated that this note was not to be paid was not evidence to the jury that the note was not to be paid, but could be used only to take away from

Lewis v. Hodgdon.

the credibility of *Plummer;* that if after the note had been left in deposit with *Plummer,* there was no new contract by which it was agreed this note should be in force, this action being brought in the name of the original payee, could not be sustained; that if the jury believed that the note had been executed, attested and indorsed as testified to by *Plummer,* and if the new bargain was made pursuant to which the land was conveyed in *January,* 1832, and this note made operative and in force as testified to by *Plummer,* the verdict should be for the plaintiff. The verdict was for the plaintiff, and the defendant filed exceptions.

The arguments were in writing.

*Wells,* for the defendant, contended : —

1. The action should have been in the name of *Mr. Evans. Bragg* v. *Greenleaf,* 14 *Maine R.* 395 ; *Bradford* v. *Bucknam,* 3 *Fairf.* 15 ; *Mosher* v. *Allen,* 16 *Mass. R.* 451.

2. *Plummer* was interested. He gave the note to *Mr. Evans* against the agreement of the parties, which was a direct breach of trust. By his bargain he was directly accountable to *Mr. Evans.* If a witness honestly believes he has an interest, even if he has not, he must be excluded. *Plumb* v. *Whiting,* 4 *Mass. R.* 518 ; 2 *Stark. Ev.* 747, *note.* But if he is really interested, although he thinks otherwise, he cannot testify. 2 *Stark. Ev.* 746.

3. *Mr. Evans* is not entitled to the character of an indorsee for value. At the best for him, he but took the note in payment of a precedent debt. *Bayley on Bills,* 525 ; *Bay* v. *Coddington,* 5 *Johns. Ch. R.* 54 ; *Same Case,* 20 *Johns. R.* 636.

4. There was no sufficient notice to the defendant of the assignment from the nominal to the real plaintiff. *Davenport* v. *Woodbridge,* 8 *Greenl.* 17.

5. The set-off should have been allowed.

6. The ruling of the Judge that *Plummer* by the cross-examination became the witness of the defendant, was erroneous. Where a witness of the opponent is called again to a new matter, after he has left the stand, it is said in the *English* practice, that he is the witness of the party calling him ; but there, it is not so on cross-examination. The party calling a subscribing witness, adopts him, and considers him credible. *Whitaker* v. *Salisbury,* 15 *Pick.* 544. If a party calls a witness interested against him, he is com-

petent for the whole cause. *Merrill* v. *Berkshire*, 11 *Pick.* 273. A party cannot impeach or show the incompetency of his own witness. 1 *Stark. on Ev.* 147.

*Evans*, for the plaintiff, contended, that the action might well be maintained in the name of *Lewis*. Courts protect the interests of an assignee, and his release after notice is void. Mere want of interest does not defeat the suit, and the indorsee may sue in the name of the payee with his consent. *Eastman* v. *Wright*, 6 *Pick.* 316; 10 *Johns. R.* 400; 11 *Johns. R.* 488; *Bragg* v. *Greenleaf*, 2 *Shepl.* 395; *Harriman* v. *Hill*, 2 *Shepl.* 127; *Thornton* v. *Moody*, 2 *Fairf.* 253; *Hatch* v. *Spearin*, 2 *Fairf.* 354; *Fairfield* v. *Adams*, 16 *Pick.* 381; *Bradford* v. *Bucknam*, 3 *Fairf.* 15. The subsequent ratification of an act, is equivalent to a previous consent thereto. *Marr* v. *Plummer*, 3 *Greenl.* 73; *Fisher* v. *Bradford*, 7 *Greenl.* 28; 13 *Pick.* 377; 3 *Pick.* 246; 8 *Pick.* 9. The admissions of an assignor, after assignment, are not admissible in evidence. 1 *Fairf.* 420; 8 *Greenl.* 77.

*Plummer* had no interest in the event of this suit. The verdict could not be used for or against him. *Franklin Bank* v. *Freeman*, 16 *Pick.* 535. But if he had any interest, it was against the plaintiff, not for him.

No set-off can be allowed. 4 *Greenl.* 101; 1 *Greenl.* 352; 17 *Pick.* 545.

*Plummer*, as subscribing witness to the note, was called to prove the execution. Thus far he was the plaintiff's witness. But when the defendant examined him relative to an entirely new matter to make out his defence, he made him his witness, and could not impeach him. 1 *Stark. Ev.* 130, § 19; *ib.* 133, § 22; *ib.* 147, § 29. If the witness considered himself under an honorary obligation, when there was no legal one, he is not disqualified. *Moore* v. *Hitchcock*, 4 *Wend.* 292.

The opinion of the Court was by

SHEPLEY J.—This Court has decided that one party to a negotiable note may upon request of another party to it maintain an action for his benefit. *Bragg* v. *Greenleaf*, 14 *Maine R.* 395. The written consent of the indorsee pending the trial was equiva-

lent to a ratification of all the previous proceedings in the prosecution of the suit.

The witness, *Plummer,* having been the depositary of the papers, and having assumed the execution of the trust, was responsible to any one, who should suffer by his violation of it. If through a breach of trust he had been instrumental in inducing *Mr. Evans* to discharge a debt by taking a note, which he knew could not be collected, he would be legally liable to him for the injury ; and equally liable to the defendant, if he had paid the note. Being responsible to both parties, his interest was balanced, and he was a competent witness. He says, that he directed the suit, and that it is prosecuted for his benefit. If this statement had not been qualified or explained, he would appear to be interested in the event of the suit; but he afterwards explained, that he " thought it was for his benefit because it would relieve him from a moral obligation he felt under to *Mr. Evans.*"

It does not appear from the whole of his statements, as explained, that the suit was prosecuted for his benefit by any agreement between the plaintiff, or *Mr. Evans,* and himself, or that he was responsible for the costs.

That he expected it would relieve him from his responsibility to *Mr. Evans,* and that he advised the suit for that reason, appears to present the true position in which he was placed according to his own account of it. And his liability would not thereby be at all changed. If the plaintiff should recover he will not be relieved, for the verdict in this case could not be evidence in a suit brought against him by the defendant, who might upon proof of his violation of any trust-assumed at the time of making the last or former papers, recover for the injury.

The note was transferred for a valuable consideration before it became payable ; and the objection, that it was received for a pre-existing debt was considered, and the reasons for the difference between the decisions in *New-York* and in this State were explained in the case of *Homes* v. *Smyth,* 16 *Maine Rep.* 177. If the testimony should satisfy the jury, that when the defendant on the fourth of *January,* 1832, received his deed, he dispensed with the condition upon which the note was deposited, and that he then agreed to pay it as part consideration for the same, knowing it to

Lewis v. Hodgdon.

be in the hands of *Mr. Evans,* this would be equivalent to a consent to all the prior proceedings with a full knowledge of them ; and it would be sufficient to prevent his introducing claims in set-off arising after that time.

It can scarcely be said to have been a fact seriously contested, that this note, with others, was left with *Plummer* to be delivered only by the consent of both parties. For the Judge instructed the jury " that if after the note had been left in deposit with *Plummer* there was no new contract by which it was agreed, this note should be in force, this action being brought in the name of the original payee could not be sustained." The material subject for inquiry then was, whether there existed any such new contract ; and the right of the parties were dependent upon the decision of that question. It is therefore apparent, that the cross-examination of the witness might have been safely closed, after he had stated the transactions prior to the fourth of *January,* 1832. And it would then have become necessary for the plaintiff to examine into the transactions of that day to make his title good.

Such a course would have exhibited the testimony respecting those transactions as the testimony of the plaintiff, and liable to be discredited by the defendant's proving, that the witness had made contradictory statements. And the result would have been the same, if the *English,* and perhaps the proper practice of examining had been adopted, which requires the party calling the witness to examine him in relation to all matters material to the issue before the cross-examination, and to confine himself on the re-examination to the matter of the cross-examination. 1 *Stark. Ev.* 179, (*Met. I. & G. Ed.*) Is there any such rule of evidence as deprives the defendant of the right to discredit the witness, because on the cross-examination he permitted him to proceed and relate the whole of the transactions between the parties ? It is true that if he examines to a collateral fact, he must take the answer, and cannot contradict it. *Spenceley* v. *De Willot,* 7 *East,* 108 ; *Rex* v. *Watson,* 2 *Stark. R.* 116. But this rule does not extend to the cross-examination upon facts material to the issue. And he may inquire in relation to other facts, material to the issue, than those elicited by the party calling the witness, and if the answers are not satisfactory, he may by any legal proof contradict

or discredit them. 1 *Stark. Ev.* 164, *(Met. I. & G. Ed.)* It may be said, that in this case the defendant is obliged to rely upon the witness to make out the defence by proving the deposit of the note ; and that if he discredits him on other material facts, the rule *falsus in uno, falsus in omnibus* will apply, and the whole of his testimony must be thrown out. But although that rule may apply, it is not of such binding effect as to authorize a court to instruct the jury that they cannot believe one part of his statement and disbelieve another. While that is the presumption of the law, cases often occur, in which jurors are constrained to yield entire credit to certain statements, and to disbelieve others. The case of *Bradley* v. *Ricardo,* 8 *Bing.* 57, presents an application of this rule. It was an action against a sheriff for a false return of *nulla bona* upon an execution. The plaintiff called the sheriff's officer to prove the receipt of the execution, and upon the cross-examination he testified, that no goods of the debtor could be found. The plaintiff then proceeded to prove by other witnesses, that the debtor had goods liable to be seized, but the presiding Judge being of opinion, that if he contradicted his own witness on that part of the case, it would destroy his testimony relating to the receipt of the execution, the plaintiff was nonsuited. A rule was obtained to set aside the nonsuit which was made absolute. *Tindal C. J.* says, " it has been urged as an objection, that this would be giving credit to the witness on one point after he has been discredited on another, but difficulties of the same kind occur in every case, where a jury has to decide on conflicting testimony."

This decides all the points that, it is perceived, will be useful upon a new trial.

*Exceptions sustained and a new trial granted.*